IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NORMAN FORD WILLOVER,

　　　　Petitioner,

　v.

A.K. SCRIBNER, Warden,

　　　　Respondent.
　　　　　　　　　　　　　　　　　　　／

No. C 04-01240 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Norman F. Willover is currently serving two sentences of life without the possibility of parole, plus 65 years, in California state prison. Petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. 2254. The petition fails to state valid grounds upon which a federal court can provide relief. It is therefore **DENIED**.

## STATEMENT

Priya Mathews and Jennifer Aninger were shot the night of January 31, 1998, in Monterey. Mathews was killed, while Aninger was critically injured. Approximately two hours later, Frances Olivo was shot and killed in Seaside, a city neighboring Monterey.

According to the testimony of eyewitnesses Melissa Contreras and Adam Tegerdal, petitioner went out driving one night with Joe Manibusan, Tegerdal, and Contreras. Contreras was driving Tegerdal's car. That night, petitioner and Manibusan allegedly talked about

1 robbing people. Petitioner had a gun. Contreras testified that the plan was for petitioner and
2 Manibusan to rob someone and then for Contreras to drive them away. The first robbery
3 attempt was unsuccessful. Contreras asserted that they parked at a baseball field, but
4 Manibusan and petitioner eventually returned to the car without having robbed anyone.
5 Tegerdal testified that Manibusan then started driving toward the wharf, looking for someone to
6 rob. Testimony indicated that the car pulled up to two women, who were later identified as
7 Mathews and Aninger, and petitioner told them to give him their money. Contreras testified
8 that shortly thereafter, petitioner started shooting the gun. Aninger testified similarly regarding
9 the exchange and also described being hit by a bullet (Exh. B at 3093–94, 3102–03, 3165, 3191,
10 3268–69, 3271, 3575–76, 3583–84).

11 The testimony further indicated that, following the shootings of Mathews and Aninger,
12 Tegerdal suggested that the group go to his house and change cars out of fear that the police
13 would be looking for them. Manibusan allegedly drove to Tegerdal's house, where they got
14 into another car owned by Tegerdal. They then went driving again. After failing to find anyone
15 to rob in Salinas, they went to Seaside. Contreras and Tegerdal testified that while Manibusan
16 was driving in Seaside, petitioner spotted Olivo. According to Contreras, petitioner asked
17 Manibusan if he was going to rob the woman, and Manibusan responded affirmatively.
18 Tegerdal did not recollect that conversation. Based on the testimony, Manibusan waved for
19 Olivo to approach. When she was about five feet away, he fired approximately six times
20 through the driver's side window. He then drove away (*id*. at 3109–10, 3272–78).

21 At trial, the defense called no witnesses. Defense counsel argued that the testimony of
22 Contreras and Tegerdal could not be believed and that the prosecution failed to establish that
23 petitioner shot anyone or abetted Manibusan in the shooting of Olivo (Exh. A at 410–11; Exh. B
24 at 3800, 3804, 3810–12, 3818; Exh. D; Exh. F at 2–6).

25 Petitioner was represented at trial by John Howell. Petitioner was convicted of first-
26 degree murder of Priya Mathews, attempted murder of Jennifer Aninger, aggravated mayhem

2

against Aninger, first-degree murder of Frances Anne Olivo, and giving false information to a peace officer. The jury also found that, as to the Mathews murder, petitioner (1) was attempting to rob her and Aninger; (2) intentionally discharged a firearm from a motor vehicle; (3) intentionally and personally discharged a firearm, a handgun; and (4) intentionally inflicted death as a result of discharging a firearm from a motor vehicle. The jury further found that, as to the crimes against Aninger, petitioner (1) intentionally and personally discharged a firearm, proximately causing great bodily injury to Aninger's brain and arm; and (2) intentionally inflicted great bodily injury as a result of discharging a firearm from a motor vehicle. Finally, the jury found that the Olivo killing was an intentional drive-by murder (Exh. A at 412–26).

Upon conviction, petitioner received the following sentences: (1) life without parole for the murder of Mathews; (2) a consecutive sentence of twenty-five years to life for the intentional discharge of the firearm relating to the murder of Mathews; (3) life without parole for the murder of Olivo; (4) fifteen years to life for the attempted murder of Aninger; and (5) twenty-five years to life for the intentional discharge of the firearm relating to the attempted murder. Sentences for other counts and enhancements were stayed (Exh. A at 592).

\*          \*          \*

The California Court of Appeal affirmed the conviction in October 2000 and modified the judgment by ordering that the sentence for attempted murder be changed to life with the possibility of parole. The California Supreme Court summarily denied petitioner's petition for review on January 30, 2001. In May 2002, petitioner filed a habeas corpus petition with the superior court, which was denied. An October 2002 petition with the court of appeal was also denied. On June 3, 2003, petitioner filed a state habeas corpus petition in the California Supreme Court. The petition was summarily denied on February 24, 2004 (Exh. F; Exh. H).

Attorney Frank G. Prantil filed the initial federal petition for writ of habeas corpus on behalf of petitioner on March 29, 2004. An order to show cause issued on June 25, 2004. Respondent then filed a motion to dismiss on the grounds that the petition was filed in an

3

untimely manner. In January 2005, the Court denied respondent's motion to dismiss. The Court also directed petitioner to advise whether the proceedings should be stayed while he returned to state court to exhaust a claim that trial counsel was ineffective by failing to present a defense regarding petitioner's mental state. In January 2005, counsel for petitioner filed the first amended petition, deleting the unexhausted claim and requesting a stay, which was granted. Counsel for petitioner informed the Court in March 2006 that after gathering additional evidence, he decided not to petition the state Supreme Court on the claim in question. The stay was accordingly lifted. The first amended petition is now the operative petition.

Respondent filed an answer to the amended petition on May 10, 2006. In July 2006, this Court barred Prantil from representing petitioner in this action following a decision by Chief Judge Vaughn Walker of this district, denying Prantil's request to be allowed to continue practicing law before this district court. Petitioner was thus allowed to either find a new attorney or represent himself. He is now represented by Judy L. Ford. Ford filed a traverse on petitioner's behalf.

**ANALYSIS**

Persons in custody pursuant to a state-court judgment may be provided habeas relief by a federal court if they are held in violation of the Constitution, laws, or treaties of the United States. A petitioner must establish that, for any claim adjudicated on the merits, the state-court decision either (1) was contrary to clearly established federal law, as determined by the United States Supreme Court; (2) involved an unreasonable application of clearly established federal law, as determined by the Supreme Court; or (3) was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. 2254.

A state court's decision is "contrary to" federal law if it fails to apply the correct Supreme Court authority to a question of law or if it applies such authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision. A state court's decision involves an "unreasonable application" of federal law if it applies the

4

1  governing Supreme Court rule in a way that is objectively unreasonable. *Williams v. Taylor*,
2  529 U.S. 362, 405, 409–10 (2000). The Ninth Circuit has held that, in Antiterrorism and
3  Effective Death Penalty Act cases, determinations of factual issues by a state court must be
4  presumed correct unless they are the result of an "unreasonable determination." *Taylor v.*
5  *Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004). This presumption can only be rebutted by
6  clear and convincing evidence. 28 U.S.C. 2254(e)(1).

7      A determination of state law by a state appellate court is binding in a federal habeas
8  action. The state's highest court is the final authority on the law of that state. *Sandstrom v.*
9  *Montana*, 442 U.S. 510, 516–17 (1979). While the state's highest court is the final authority on
10 the law of that state, a federal court may re-examine a state court's interpretation of its law in
11 extreme cases where that interpretation "appears to be an 'obvious subterfuge to evade
12 consideration of a federal issue.'" *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975) (citing
13 *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 129 (1945)); *Hicks v. Feiock*, 485 U.S. 624,
14 629 (1988).

15     Petitioner maintains that his conviction was unconstitutional because (1) the trial court
16 improperly instructed the jury about implied malice; (2) the trial court improperly instructed the
17 jury regarding lesser-included offenses; (3) the trial court improperly instructed the jury
18 regarding the burden of proof for accomplices; (4) the evidence was insufficient to support the
19 conviction for the murder of Olivo; (5) the state court failed to adequately instruct the jury
20 concerning when a robbery or attempted robbery ends; (6) petitioner's sentence based upon the
21 special circumstance of a drive-by shooting violates substantive due process and the Eighth
22 Amendment; and (7) petitioner did not receive effective assistance of counsel; .

23     **1.**    **IMPLIED MALICE JURY INSTRUCTION.**

24     Petitioner alleges that his federal rights were violated based on the definition of implied
25 malice given in the jury instructions. The jury was instructed as follows: "Malice is implied
26 when the killing resulted from an intentional act, the natural consequences of the act are

5

1  dangerous to human life, and the act was deliberately performed with knowledge of the danger
2  to and with conscious disregard for human life" (Exh. B at 3860).  Petitioner asserts that this
3  instruction (1) violated due process because all elements of the crime were not proven beyond a
4  reasonable doubt; (2) unlawfully enlarged a criminal statute; (3) violated separation of powers;
5  and (4) violated fundamental fairness.

### A.     Proof Beyond a Reasonable Doubt.

All elements of a crime must be proven to a jury beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 510 (1995).  Petitioner alleges that the instruction deprived the jury of the ability to properly determine whether all of the elements of murder had been proven beyond a reasonable doubt.  Petitioner maintains that the instruction ignored the plain and clear language in Penal Code Section 188: "[Malice] is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned or malignant heart."  Petitioner contends that the instruction's requirement of "conscious disregard for human life" is quite different than "an abandoned and malignant heart."  This order disagrees.

The California Supreme Court has approved the omission of the phrase "abandoned and malignant heart," deeming the terminology superfluous and confusing. *People v. Phillips*, 64 Cal. 2d 574, 587–88 (1966).  The California Supreme Court has repeatedly approved the modern jury instruction used in this case. *People v. Robertson*, 34 Cal. 4th 156, 164 (2004); *People v. Lasko*, 23 Cal. 4th 101, 107 (2002); *People v. Nieto Benitez*, 4 Cal. 4th 91, 111 (1992); *People v. Dellinger*, 49 Cal. 3d 1212, 1222 (1989).

Petitioner's allegation that all elements of the murder offense were not proven beyond a reasonable doubt rests on the notion that the implied malice jury instruction was invalid.  For the reasons described below, this order rejects the allegation that the implied malice instruction violated federal law.  Furthermore, this Court does not have reason to re-examine the state court's interpretation of California law because there is no allegation that it was a subterfuge to

6

evade a federal issue. Given that the instruction was not erroneous, the allegation of a constitutional violation based on an improper jury instruction becomes moot.

### B.     Unlawfully Enlarging a Criminal Statute.

Petitioner asserts that the implied malice instruction unlawfully enlarged a criminal statute, in violation of his due process rights. Petitioner maintains that the instruction did not require the jury to find that the act was done for a base and antisocial purpose, or that it was committed with an abandoned and malignant heart. Accordingly, petitioner asserts that the instruction contradicts California law. Petitioner cites *People v. Poddar*, where the California Supreme Court asked the following questions: (1) whether the acts were done for a base, antisocial purpose; (2) whether the accused was aware of a duty not to commit acts involving the risk of grave injury or death; and (3) if so, whether the accused acted despite such awareness. *People v. Poddar*, 10 Cal. 3d 750, 759–60 n.11 (1974). Petitioner alleges that this deviation from California law, as stated in *Poddar*, unlawfully enlarged the criminal statute.

Due process requires that the law provide sufficient warning of what constitutes criminal conduct. *Rose v. Locke*, 423 U.S. 48, 50 (1975). Accordingly, where a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which has been expressed prior to the conduct in issue," it cannot be given retroactive effect. *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964).

There can be no such due process violation here where the instruction does not deviate from California law. Instead, the instruction reflects a common interpretation of a California statute of which petitioner was sufficiently warned. When the California Supreme Court in *Phillips* questioned the use of the phrase "abandoned and malignant heart" in jury instructions, it noted that "[t]he presence of the metaphysical language in the statute does not compel its incorporation in instructions." *Phillips*, 64 Cal. 2d at 588. The *Phillips* court concluded that inclusion of such language would merely be duplicative of a "conscious disregard of life" instruction as given in this case. *Ibid*. It is apparent that the instruction in question was not an

7

attempt to alter California law, but only translated the statute into comprehensible language for jurors. Furthermore, California Supreme Court decisions prior to the conduct at issue in this case upheld such an instruction, indicating that the state court's decision in this case was both expected and defensible. *Nieto Benitez*, 4 Cal. 4th at 111; *Dellinger*, 49 Cal. 3d at 1222. In addition to the fact that the instruction did not enlarge the law but rather reflected it, petitioner also had sufficient warning of the criminality of his conduct. Accordingly, petitioner's allegation that the statute was unconstitutionally enlarged fails.

### C.     Separation of Powers.

The implied malice instruction given in this case is based on the standard California jury instruction that petitioner alleges developed from case law, including *People v. Watson*, 30 Cal. 3d 290 (1981). Petitioner argues that the state legislature is responsible for drafting the law, so the courts may not enlarge a criminal statute based on the doctrine of separation of powers. *See Superior Court v. County of Mendocino*, 13 Cal. 4th 45, 52–53 (1996). Accordingly, petitioner argues that the California Supreme Court violated separation of powers in *Watson* and in other cases by changing the definition of implied malice. *Ibid*. As described in the previous section, however, this order finds that the instruction in question did not enlarge a criminal statute. Accordingly, petitioner's assertion that enlarging a criminal statute violates separation of powers is moot.

### D.     Fundamental Fairness.

Petitioner alleges that due process guarantees that a defendant be treated with fundamental fairness. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982); *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967). Petitioner maintains that the jury instruction in this case regarding implied malice violated this principle of fundamental fairness because it was incorrect with regards to a necessary element of the charge. This claim fails, however, as this Court finds that the instruction was not given in error.

8

### 2. JURY INSTRUCTION REGARDING LESSER-INCLUDED OFFENSES.

The trial court instructed the jury that involuntary manslaughter was a lesser-included offense to murder and that simple mayhem was a lesser-included offense to aggravated mayhem. The court gave the following instruction: "However, the court cannot accept a guilty verdict on a lesser crime unless you have unanimously found the defendant not guilty of the charged crime" (Exh. B at 3879). In both cases, petitioner was convicted of the target offense rather than the lesser-included offense. Petitioner asserts that this instruction violated due process and invited a compromise verdict.

#### A. Allegation of a Due Process Violation.

Petitioner maintains that the instruction violated due process because it shifted the burden to petitioner to prove that he was not guilty of murder before the jury could return a verdict of guilty on a lesser charge. Petitioner asserts that the error was a "structural defect," requiring automatic reversal. *Brect v. Abrahmson*, 507 U.S. 619, 629 (1993).

The Supreme Court has held that due process is violated by an instruction that shifts the burden of persuasion on a material element of the offense to the defendant. *Francis v. Franklin*, 471 U.S. 307, 317 (1985). Petitioner has not cited, however, nor has the Court found any Supreme Court authority indicating that an "acquittal first" instruction does so. The instruction in question did not indicate that petitioner needed to prove himself not guilty. It merely required the jury to decide that he was not guilty of the higher offense before convicting petitioner of a lesser offense. Consequently, this instruction was not contrary to any clearly established federal law as determined by the Supreme Court. Accordingly, petitioner's argument fails.

#### B. Compromise Verdict.

Petitioner argues that this instruction regarding lesser-included offenses invited a compromise verdict and was accordingly prejudicially erroneous, requiring reversal. Petitioner maintains that a juror who did not believe that petitioner was guilty of the greater offense of

9

murder, but who thought petitioner was guilty of a lesser offense, could not consider a lesser offense without convincing the other jurors that petitioner was not guilty of the greater offense. Petitioner additionally suggests that a "failure-to-agree" instruction should have been given. Such an instruction allows the jury to deliberate about all possible offenses when there is disagreement regarding the principal offense.

The Ninth Circuit has recognized the concern with compromise verdicts: "If the jury is heavily for convicting on the greater offense, dissenters favoring the lesser may throw in the sponge rather than cause a mistrial that would leave the defendant with no conviction at all, although the jury might have reached sincere and unanimous agreement with respect to the lesser charge." *United States v. Jackson*, 726 F.2d 1466, 1469 (9th Cir. 1984). The decision in *Jackson*, however, is distinguishable from the present case because it dealt with an instruction to acquit on a greater charge *before even considering* the lesser charge. *Ibid*. The California Supreme Court has affirmed an instruction that, similar to the instruction in this case, deals only with the order in which a jury would return verdicts. *People v. Riel*, 22 Cal. 4th 1153, 1201 (2000).

Petitioner's assertion that a "failure to agree" instruction should have been given also relies entirely on circuit law. The Ninth Circuit has suggested that due process mandated a "failure-to-agree" charge. *Jackson*, 726 F.2d at 1469. On the other hand, the Seventh Circuit has held that such a rule was not mandated by the Constitution. *Pharr v. Israel*, 629 F.2d 1278, 1282 (7th Cir. 1980). Even if *Jackson* were on all fours with our issue, habeas relief cannot be premised on circuit law. *See Duhaime v. Ducharme*, 200 F.3d 597, 602–03 (9th Cir. 2000); *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1172 (9th Cir. 2003). Petitioner has not cited, nor has the Court found, any Supreme Court decisions indicating that such an instruction is unconstitutional for inviting a compromise verdict or that a "failure to agree" instruction is required. Accordingly, the lesser-included offense instruction is not a ground for awarding habeas relief.

10

### 3. JURY INSTRUCTION CONCERNING THE BURDEN OF PROOF FOR ACCOMPLICES.

The trial court in this case instructed the jury that testimony of accomplices must be corroborated with other independent evidence and regarded with distrust. Petitioner maintains that eyewitnesses Contreras and Tegerdal were accomplices whose testimony should have accordingly be treated with distrust. The trial court instructed the jury that petitioner had the burden of proving by a preponderance of the evidence that the government's witnesses were accomplices (Exh. B at 3855–57). Petitioner asserts that this instruction violated due process because it shifted the burden of proof to petitioner and failed to acknowledge that Contreras and Tegerdal were accomplices as a matter of law. For the below-stated reasons, this order finds that petitioner's argument lacks merit.

#### A. Due Process.

Petitioner maintains that California law conflicts with federal due process standards. In California, accomplice testimony is insufficient without corroboration to prove the case beyond a reasonable doubt, yet the defendant is required to prove by a preponderance of the evidence whether the prosecution has offered accomplice testimony. *People v. Tewksbury*, 15 Cal. 3d 953, 967–68 (1976). Petitioner asserts that, as a result, in order to demonstrate that someone is an accomplice, a defendant must relinquish his Fifth Amendment rights and demonstrate his own knowledge of crimes. Petitioner contends that in order to avoid this conflict with due process, once the defense has produced some evidence to indicate that a witness is an accomplice, the prosecution should then have the burden to either prove that the witness is not an accomplice or that there is sufficient corroboration supporting the testimony.

The issue before the Court is whether the state-court decision was either contrary to or an unreasonable application of clearly established federal law determined by the United States Supreme Court. The California Supreme Court has upheld the instruction in question, as well as the statute on which it is based, noting that the requirement "has no bearing on the prosecution's proof of any element of the charged crime." *People v. Frye*, 18 Cal. 4th 894, 968–69 (1998). While the United States Supreme Court has not made a decision regarding a

11

defendant's right to such an instruction, it has upheld a statute imposing on the defense the burden of proving extreme emotional disturbance, which reduced murder to manslaughter. *Patterson v. New York*, 432 U.S. 197, 201–02 (1997). Given that a state can require a defendant to prove a defense, it is not unreasonable for a state to conclude that it could also require a defendant to prove a fact that does not constitute an element of the crime. Furthermore, because there are no sufficiently similar Supreme Court decisions, the state-court decision was not contrary to federal law as determined by the Supreme Court. Accordingly, petitioner's due process allegation fails.

### B. Petitioner's Requested Instruction that Tegerdal and Contreras Were Accomplices as a Matter of Law.

Petitioner also asserts that both Tegerdal and Contreras were accomplices as a matter of law and the jury should have been so instructed. California Penal Code section 1111 defines an accomplice as someone who is liable for the same crime as the defendant. *People v. Martinez*, 132 Cal. App. 3d 119, 130 (1982). A witness is considered an accomplice as a matter of law when undisputed facts are admitted that demonstrate the witness was more likely than not an accomplice. *Tewksbury*, 15 Cal. 3d at 967. Petitioner relies on *Martinez*, where it was undisputed that a witness participated in two robberies as the driver of the getaway car. Even though he later abandoned the plan, the court held that his testimony established by a preponderance of the evidence that he was an accomplice and, therefore, he was an accomplice as a matter of law. *Martinez*, 132 Cal. App. 3d at 131–32.

Based on undisputed evidence, Tegerdal knew about the plan to commit robberies, knew about the presence of the gun, and supplied his car for that purpose. He had also participated in a previous robbery with petitioner. Tegerdal admitted that he thought he would share in the money from the robberies, waited in the getaway car, and aided the defendant in avoiding detection. According to the evidence, Contreras drove the car when petitioner and Manibusan were looking for someone to rob. She agreed to be the getaway driver and drove at least part of the night (Exh. B at 3095–96, 3102–4, 3109–10, 3177–78, 3266, 3272–76, 3600–01).

12

There is no federal right at issue. Indeed, according to federal law, "[t]he uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible or unsubstantial on its face." *United States v. Lopez*, 803 F.2d 969, 973 (9th Cir. 1986). This allegation is thus merely a question of a state court's determination of state law. Because there is no obvious subterfuge, this Court will not reconsider that determination. Accordingly, there is no basis for relief on the accomplice issue and petitioner's argument fails.

### 4. SUFFICIENCY OF THE EVIDENCE SUPPORTING PETITIONER'S CONVICTION FOR THE MURDER OF FRANCES ANNE OLIVO.

Petitioner maintains that his conviction for the murder of Frances Anne Olivo violates due process because the evidence was insufficient to support the conviction. Due process requires that each element of the offense be proven beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 364 (1970). Petitioner was convicted of the murder of Olivo based on the theory that he aided and abetted the killer. Petitioner asserts that, when taking the evidence in the light most favorable to the prosecution, it does not support the conviction for Olivo's murder because petitioner allegedly did nothing to aid and abet the killing. Petitioner maintains that the evidence demonstrates only that he was present as a mere passenger in the car.

The standard for reviewing sufficiency of the evidence asks "whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). When faced with a record that supports conflicting inferences, the court "must presume — even if it does not affirmatively appear on the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992). The AEDPA, as interpreted by the Ninth Circuit, requires this Court to review the holding of the state appellate court rather than of the jury. *Juan H. v. Allen*, 408 F.3d 1262, 1274–75 (9th Cir. 2005). Accordingly, the standard of review

13

is whether the state court's application of the standard from *Jackson v. Virginia* was reasonable. *Ibid*.

Under California law, a person is guilty of any crime that the person knowingly and intentionally aids. *People v. Beeman*, 35 Cal. 547, 550 (1984). Here, the state court found that "a rational trier of fact could have found, beyond a reasonable doubt, that [petitioner] committed an act with the knowledge of Manibusan's criminal purpose and with the intent or purpose either of committing, or of encouraging or facilitating commission of, the shooting of Frances Olivo" (Exh. F at 8–9). The court based this conclusion on a thorough review of the record. Petitioner and Manibusan had discussed the robbery and had looked for a robbery victim while petitioner possessed his pistol (*ibid*.). After the shooting of Aninger and Mathews, Manibusan indicated he wanted his own turn, and the group looked for another victim (*ibid*.). In particular, the court found that "the fact that Manibusan possessed [petitioner's] pistol after asserting that he 'wanted his turn' supports the inference that [petitioner] willingly gave the pistol to Manibusan or allowed Manibusan to use it as part of their joint expedition" (*ibid*.). Furthermore, "the fact that defendant asked Manibusan whether he was going to rob Olivo supports the inference that he actively encouraged or incited Manibusan to commit a robbery and the shooting" (*ibid*.).

Construed in the light most favorable to the prosecution, the evidence presented at petitioner's trial supports the state court's finding that a rational trier of fact could have found guilt beyond a reasonable doubt. The conclusion that petitioner was aware of Manibusan's criminal purpose is supported by the prior shootings of Aninger and Mathews, Manibusan's possession of petitioner's gun, and conversations between petitioner and Manibusan. Petitioner's intent to encourage the crime could be concluded based on Manibusan's use of petitioner's gun, as well as conversations between petitioner and Manibusan. Accordingly, the state court was not unreasonable in upholding the jury's verdict.

14

### 5. JURY INSTRUCTION REGARDING WHEN A ROBBERY OR ATTEMPTED ROBBERY ENDS.

The jury was instructed that if a person is killed during the commission of a robbery or attempted robbery, the murder is first degree. Petitioner alleges that his conviction for first-degree murder of Mathews violates due process because the jury was improperly instructed regarding when a robbery or attempted robbery ends. The questioned instruction was as follows (Exh. B at 3862–63):

> For the purpose of determining whether an unlawful killing has occurred during the commission or attempted commission of a robbery, the commission of the crime of robbery is not confined to a fixed place or a limited period of time. A robbery is still in progress after the original taking of physical possession of the stolen property while the perpetrator is in possession of the stolen property and fleeing in an attempt to escape. Likewise it is still in progress so long as immediate pursuers are attempting to capture the perpetrator or to regain the stolen property. A robbery is complete when the perpetrator has eluded any pursuers, has reached a place of temporary safety, and is in unchallenged possession of stolen property after having effected an escape with such property.

Petitioner alleges that the jurors were not instructed on all relevant principles and that the instruction in question was inappropriate entirely due to the presence of irrelevant information.

#### A. Failure to Instruct on All Relevant Principles.

Petitioner alleges that the trial court failed to instruct the jury on all relevant principles, including when an attempted robbery or robbery ends. Petitioner suggests that the evidence indicates that petitioner shot the victims out of frustration because the victims did not hear him when defendant ordered them to give him money.

The trial court is required to instruct the jury on "those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." *People v. Sedeno*, 10 Cal. 3d 703, 715–17 (1974) (quoting *People v. St. Martin*, 1 Cal. 3d 524, 531 (1970)). Instructional error occurs when, in the context of other instructions

15

and the entire trial record, an instruction creates a reasonable probability that the jury applied the law in an manner that violates the Constitution. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Petitioner fails to demonstrate how the instruction created a reasonable probability that the jury misapplied the law. Respondent correctly notes that the trial court did instruct the jury regarding attempted crime. The court instructed the jury that an attempt has two elements, "a specific intent to commit the crime" and "a direct but ineffectual act done towards its commission" (Exh. B at 3859). The court also explained that the acts must "clearly indicate a certain unambiguous intent to commit that specific crime [and] must be an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design" (*ibid*.). In addition to this description of attempt, the jury was also instructed that robbery involves taking personal property from another by means of force or fear with the intent to permanently deprive the other person of that property (*id*. at 3876–77). Petitioner does not allege that these instructions are incorrect, but rather that they do not specifically explain the duration of an attempted robbery. In combination, however, the instructions do explain what constitutes attempted robbery. The state court was thus not unreasonable in rejecting petitioner's claim and concluding that there is no reasonable probability that the jury instructions led the jury to apply the law in a manner that violated the Constitution.

### B.     Irrelevant Information in the Instruction.

Petitioner asserts that the instruction was inappropriate entirely because it referred to circumstances unrelated to the charges, such as the taking of property, pursuit, and unchallenged possession of stolen property after an escape with such property. Accordingly, petitioner maintains that the jury had no guidance concerning whether the homicide took place during the commission of a robbery or attempted robbery.

In addition to the instruction in question, however, the jury was also given the following instruction: "Whether some instructions apply will depend on what you find to be the facts. Disregard any instruction which applies to facts determined by you not to exist" (Exh. B at

16

3881–82).  Accordingly, any irrelevant information in an instruction should have been disregarded by the jury.  It is unclear from petitioner's argument how the jury would have improperly applied the law merely due to irrelevant information in an instruction.  Looking at the record as a whole, there is no reasonable probability that irrelevant material in the jury instruction led the jury to apply the law in a manner that violated the Constitution.  Furthermore, the instructions given sufficiently explained a robbery and an attempt.  The state court was not unreasonable to reject the assertion that the instruction in its entirety was an error.

### 6. THE SPECIAL CIRCUMSTANCE OF A DRIVE-BY SHOOTING.

California Penal Code Section 190.2(a)(21) creates a special circumstance if a murder for which defendant was convicted "was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death."  Petitioner maintains that his sentences of life without parole for the murders of Aninger and Olivo, based upon the special circumstance of drive-by shooting, violated his substantive due process and Eighth Amendment rights.

### A. Due Process Allegation.

Petitioner alleges that the special circumstance in question is based on arbitrary law, in violation of due process.  Courts have held that substantive due process requires laws that are reasonably related "to a proper legislative purpose."  *Nebbia v. New York*, 291 U.S. 502, 537 (1934).  The legislation must be narrowly drawn to further compelling state interests.  *Reno v. Flores*, 507 U.S. 292, 302 (1993).

The special circumstance in question has previously been upheld in California against a due process challenge: "The Legislature can rationally decide, as a matter of public policy, to discourage the practice of carrying loaded firearms in vehicles by placing those who do so on notice that misuse of that firearm in these circumstances an lead to increased punishment." *People v. Rodriguez*, 66 Cal. App. 4th 157, 177 (1998).  Petitioner cites no authority to suggest that the special circumstance in question is incorrect or unreasonable in light of United States Supreme Court precedent.  Accordingly, petitioner's due process argument fails.

17

**B.     Allegation of Cruel and Unusual Punishment.**

Petitioner further asserts that the Eighth Amendment requires a meaningful distinction between cases with severe sentences and those without severe punishments. Petitioner maintains that the special circumstance of a drive-by shooting randomly applies the sentence of life without parole because (1) it applies to murders where there may or may not be premeditation, deliberation, or malice and (2) it applies to murders that may only be second degree.

The Supreme Court has stated that due process is violated where the death penalty is random or arbitrary. *Furman v. Georgia*, 408 U.S. 238 (1972). The Supreme Court has also held that "[i]f a person sentenced to death in fact killed, attempted to kill, or intended to kill, the Eighth Amendment is not violated by his or her execution." *Cabana v. Bullock*, 474 U.S. 376, 386, *abrogated on other grounds by Pope v. Illinois*, 481 U.S. 497, 503 n.7. Respondent also notes that the Supreme Court found that it is not cruel and unusual punishment to sentence a defendant to life without parole for possession of 672 grams of cocaine. *Harmelin v. Michigan*, 501 U.S. 957 (1991).

Based on this Supreme Court precedent, the state court was not unreasonable in rejecting the claim that life without parole as punishment for a drive-by shooting constitutes cruel and unusual punishment. In order to find this special circumstance, the jury had to first find that petitioner intentionally shot each victim. If execution as punishment for intentional killing is not an Eighth Amendment violation then, *a fortiori*, life without parole is also not a violation. Additionally, it is reasonable to conclude that a drive-by shooting is at least as severe as possession of 672 grams of cocaine. Because the Supreme Court found that the punishment of life without parole was not cruel and unusual for possession of 672 grams of cocaine, it is reasonable to conclude that the same punishment for a drive-by shooting would also not constitute cruel and unusual punishment. The state court was thus not unreasonable to conclude that petitioner's punishment does not constitute cruel and unusual punishment.

### 7. INEFFECTIVE ASSISTANCE BY COUNSEL.

The Sixth Amendment entitles defendants to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86. Petitioner alleges that a number of errors by trial and appellate counsel undermined confidence in the trial. Petitioner asserts that trial counsel Howell failed to object and appellate counsel failed to appeal that the trial court violated due process by (1) incorrectly instructing the jury regarding implied malice; (2) shifting the burden of proof to petitioner to prove he was not guilty of the greater charges before the jury could return a verdict for a lesser charge; and (3) shifting the burden of proof to petitioner to prove that Tegerdal and Contreras were accomplices. Petitioner further argues that trial counsel failed to request an instruction that if petitioner abandoned the robbery prior to the shooting, felony murder would not apply.

In order to demonstrate ineffectiveness of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland*, 466 U.S. at 687–88, 694. "Reasonable probability  is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Petitioner's allegation of ineffective counsel based on counsel's failure to challenge instructions fails because, as held above, such instructions were valid. The allegation based on counsel's failure to request an instruction that felony murder would not apply if petitioner had abandoned the attempt also fails because such an instruction was not necessary. As previously described, the record as a whole indicates that jurors had sufficient information with which to determine when a robbery or attempted robbery ends. Accordingly, petitioner has not shown that counsel's assistance fell below an objective standard of reasonableness. Petitioner has also failed to demonstrate a reasonable probability that these decisions by counsel could have affected the outcome of the trial. Petitioner has not established ineffective assistance of counsel.

19

**CONCLUSION**

Petitioner has not shown that he is in custody in violation of federal law. The petition is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated: July 23, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE